NEW BANK OF NEW ENGLAND, N.A.

v.

Michael F. CALLAHAN;
John S. Kopka III.

Michael F. CALLAHAN, Third-party Plaintiff,[1]

v.

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Bank of New England, N.A., Third-party Defendant.

Civ. No. 91–62–D.

United States District Court,
D. New Hampshire.

Sept. 2, 1992.

1. Although the instant motions refer to Callahan as the "plaintiff in counterclaim" and FDIC as "defendant in counterclaim", Callahan's action against FDIC is actually a third-party action and will be hereinafter referred to as such.

Jonathan S. Springer, Portsmouth, N.H., for plaintiff and FDIC.

Stephen L. Tober, Portsmouth, N.H., for defendant Callahan.

## ORDER

DEVINE, Chief Judge.

This order addresses motions for summary judgment filed by plaintiff New Bank of New England (NBNE) and third-party defendant Federal Deposit Insurance Corporation (FDIC). For the reasons that follow, NBNE's motion is granted, and FDIC's is denied.

### Factual Background[2]

On July 10, 1987, defendants Callahan and Kopka executed a promissory note to Union National Bank[3] in the amount of $85,000. This note was secured by a first

---

2. Because neither Callahan nor Kopka has filed objection to the instant motions, both have waived the right to controvert the facts asserted by the plaintiff and the third-party defendant in the motions and accompanying materials. *Jaroma v. Massey*, 873 F.2d 17 (1st Cir.1989). The facts herein cited, therefore, are culled from those sources.

3. Via machinations not here relevant, NBNE has succeeded to the interests of Union National Bank and Bank of New England, N.A. For convenience, the court will describe the bank parties as plaintiff.

mortgage on a .35 acre property located on Fuller Acres Street in Hampton, New Hampshire. As here relevant, the note obligated Callahan and Kopka to make monthly interest payments to the bank on the outstanding principal each month, beginning August 10, 1987. The entire principal and interest balance was originally due on May 10, 1988, and later extended to August 10, 1988.

The last payment received on the note was on August 28, 1989. This payment, however, did not extinguish the debt. Plaintiff made unsuccessful demands on Callahan and Kopka for payment of the outstanding principal balance and interest. On September 14, 1990, plaintiff foreclosed on the note and mortgage. The Fuller Acres property was sold at foreclosure for $38,500, leaving Kopka and Callahan owing a deficiency of $55,132.22. With the addition of costs and other items, plaintiff claims a total debt of $65,969.46, as of February 28, 1992.

On February 7, 1989, defendant Callahan executed a second promissory note in favor of Bank of New England, N.A.,[4] in the amount of $985,000. This note was secured by a first mortgage on property located on Ocean Boulevard in Hampton, New Hampshire, and obligated Callahan to make monthly payments to the bank beginning March 3, 1989. The entire principal and accrued interest was due to be paid by November 3, 1989. Callahan's last payment to the bank was in November 1989, but an outstanding balance remained, for which the bank made several unsuccessful demands.

The bank subsequently foreclosed, and on September 14, 1990, it sold the Ocean Boulevard property for $235,000. As of February 28, 1992, Callahan's total deficiency stood at $967,479.10.

In April 1990, plaintiff filed suit in Rockingham County (New Hampshire) Superior Court to collect the above-described deficiencies. Subsequently, Callahan filed a third-party action,[5] alleging abuse of process, breach of an implied covenant of good faith and fair dealing, failure to conduct a commercially reasonable foreclosure sale, and breach of fiduciary duty. NBNE now seeks summary judgment on its affirmative claims, and FDIC seeks the same against Callahan in his third-party action.

*Discussion*

The role of summary judgment is " 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to " 'show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law,' " *id.* (quoting 56(c), Fed.R.Civ.P.), and the court must view the entire record in the light most favorable to the nonmovant, " 'indulging all reasonable inferences in that party's favor,' " *id.* (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)). However, once the moving party has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Rule 56(e), Fed.R.Civ.P.); *see also Mesnick, supra,* 950 F.2d at 822 ("Not every discrepancy in the proof is enough to forestall a properly supported motion for summary judgment; the disagreement must relate to some genuine issue of material fact.").

With respect to NBNE's claims, defendants have not disputed any of the relevant material facts asserted by plaintiff, i.e., executing the notes and receiving the funds, *see* Answer to Plaintiff's Petition for Injunction, Monetary Damages and Other Relief ¶¶ 18 and 25. Most importantly, defendants have presented nothing to rebut plaintiff's claim of an existing deficiency.

---

4. *See supra* note 2.

5. Defendant Kopka has filed neither an answer nor an appearance in this matter.

Defendants may not simply rest on denial of plaintiff's pleadings. Rule 56(e), Fed. R.Civ.P. As no genuine issue of material fact remains with respect to defendants' respective liabilities on the two notes in question, plaintiff NBNE's motion for summary judgment is granted.

Third-party defendant FDIC asserts two different grounds in support of its motion. The court finds neither persuasive. A brief discussion follows.

■ FDIC first argues that Callahan's failure to comply with 12 U.S.C. § 1821(d)(6)[6] bars the third-party action. The argument goes as follows. FDIC disallowed Callahan's administrative claim on June 4, 1991. *See BNE v. Callahan*, 758 F.Supp. 61 (D.N.H.1991). Following the disallowance, Callahan

> has not filed a new lawsuit, [and] has failed to 'continue' the instant action by filing a Notice of Continuance or by taking any other affirmative action with this Court and has failed to take any other action which would keep his counterclaim

alive. The 60–day deadline for taking such action expired on August 4, 1991. Memorandum in Support of Motion for Summary Judgment at 10. Thus, FDIC argues, the claim disallowance is final, and Callahan lacks any further right to pursue his claim. The court disagrees.

Neither the statute nor relevant case law—the latter of which FDIC has failed to provide—indicates that any "affirmative action" is necessary to "continue" an action[7] commenced before the appointment of a receiver, or to keep the action "alive". In the court's opinion, Callahan's claim remained "alive" during the administrative process. *See also Marquis, supra*, 965 F.2d at 1154 (cases "suspended" during administrative procedure can simply be resumed). Accordingly, the court declines to rely on 12 U.S.C. § 1821(d)(6) as grounds to grant FDIC's motion.

FDIC's second argument is premised on the now-familiar doctrine set forth in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), which, along with its statutory counterpart, 12 U.S.C. § 1823(e),[8] prohibits a party from

---

6. 12 U.S.C. § 1821(d)(6) provides:

**(6) Provision for agency review or judicial determination of claims**

**(A) In general**

Before the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

**(B) Statute of limitations**

If any claimant fails to—

(i) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or

(ii) file suit on such claim (or continue an action commenced before the appointment of the receiver),

before the end of the 60–day period described in subparagraph (A), the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

7. Recent case law indicates that Callahan need not have filed a new action. *Marquis v. FDIC*, 965 F.2d 1148 (1st Cir.1992).

8. 12 U.S.C. § 1823(e) provides:

**(e) Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

relying on any unwritten agreement to defeat a claim by, or assert a claim against, FDIC. *See, e.g., Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46 (1st Cir.1991).

 In order for FDIC to cloak itself with the protection of *D'Oench* or section 1823(e), however, the other party must be trying to rely on an "agreement" to defeat FDIC's interest in an asset. *See Bascom v. FDIC*, 777 F.Supp. 123, 126 (D.N.H.1991) (mechanic's lienholder's suit to challenge value obtained at foreclosure not a suit based on an agreement; therefore, neither *D'Oench* nor section 1823(e) bars claim).

 In the case at bar, Callahan's suit alleges abuse of process for the "timing and circumstance" of the suit against him; breach of an implied covenant of good faith and fair dealing; failure to conduct a commercially reasonable sale; and breach of fiduciary duty with respect to the foreclosure sale. FDIC here argues for dismissal because Callahan has described his claim as a "lender liability action", and in *Timberland*, also a lender liability action, similar claims were dismissed pursuant to *D'Oench*. This argument, however, overlooks *Timberland*'s reaffirmance of the "agreement" requirement. *See id.* at 50 ("The district court correctly held that *D'Oench* bars affirmative claims, whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement.").

Here, the court can find no such agreement. FDIC argues, for example, that the abuse of process claim, based on the timing of the state court suit, "can be fairly read to incorporate an agreement on the part of the bank not to sue at a particular time or in a particular manner," and such an unwritten agreement is barred by *D'Oench*. The court disagrees. The obligation to refrain from abuse of process is one that arises from state law. *Amabello v. Colonial Motors*, 117 N.H. 556, 559, 374 A.2d 1182, 1184 (D.N.H.1977). Such legal obligations are presumed to be part of every contract. *Sauriolle v. O'Gorman*, 86 N.H. 39, 163 A. 717 (1932); *Boston Ice Co. v. Boston & Maine R.R.*, 77 N.H. 6, 86 A. 356 (1913). *See generally* 17A Am.Jur.2d § 381 (1991). The court here finds that each of the four counts of the third-party complaint fits the same mold—allegations based on the bank's legal obligations—rather than purported agreements between the parties. Having so found, the court rules that the third-party claims do not rely on "agreements" within the meaning of *D'Oench* on section 1823(e), and therefore FDIC's motion for summary judgment on those grounds must be denied.[9]

### Conclusion

For the reasons herein stated, NBNE's motion for summary judgment on its claims against Kopka and Callahan is granted; FDIC's motion for summary judgment on Callahan's third-party complaint is denied.

SO ORDERED.

---

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

**9.** The court notes that FDIC did not address the substance of the counterclaim within the instant motion. As such, the court did not so address the claims.